UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------- x
DASHANTE SCOTT JONES,                              :
                                                   :
                           Plaintiff,              :
                                                   :        INITIAL REVIEW
           -against-                               :        ORDER
                                                   :
BECKERT,  ROSS,  MARCELLIN,  ROACH,:                        23-CV-1603 (VDO)
NORDBY, and MALDONADO,                             :
                                                   :
                           Defendants.             x
-------------------------------------------------
```

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Dashante Scott Jones is a sentenced inmate incarcerated at Corrigan Correctional Center in Uncasville, Connecticut.  He brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 naming six defendants, Officer Beckert, Officer Ross, Lieutenant Marcellin, Officer Roach, Officer Nordby, and Warden Maldonado.

The plaintiff asserts claims for violation of his rights under federal and state law.  He seeks damages from the defendants in their individual and official capacities.

## I.    BACKGROUND

While the Court does not set forth all of the facts alleged in the plaintiff's Complaint (Doc. No. 1), it summarizes his basic factual allegations here to give context to its ruling below.

The incidents underlying this action began on November 15, 2023, while the plaintiff was confined at Garner Correctional Institution.  Doc. No. 1 at 4.  On that date, the plaintiff called the PREA hotline and reported that Officer Beckert had sexually harassed him by telling another inmate that the plaintiff wanted to lick him in a sexual manner.  *Id.*  The plaintiff alleges that, following his report, prison officials failed to follow PREA protocols and ensure that

Officer Beckert no longer worked in the plaintiff's housing unit. *Id.* Since the report, Officer Beckert has repeatedly been in the plaintiff's housing unit where she harasses him by calling him "pretty boy homo" and "fagot" and telling other inmates that the plaintiff was masturbating. *Id.* The plaintiff sent letters and grievances to Warden Maldonado, but she did nothing. *Id.*

On November 19, 2023, Officer Beckert told the plaintiff that she was going to have someone go into his cell and destroy his legal work because he had made a PREA report against her. *Id.* When Officer Ross came to search the cell, the plaintiff told him that his cell had already been searched that week and, because he was not on high security status, it was "illegal" to search his cell again. *Id.* Officer Ross called the plaintiff a racially derogatory name and told him to get out of the way. *Id.*

The plaintiff sat at a table in view of his cell. *Id.* Officer Beckert called the plaintiff a "monkey" and told him to move back to another table. *Id.* The plaintiff refused to move because there was no rule that he had to sit at a specific table while his cell was being searched. *Id.* at 5. Officer Ross threatened the plaintiff with segregation if he did not do as Officer Beckert instructed, but the plaintiff refused. *Id.* Officer Ross told Officer Beckert to call a lieutenant and issue the plaintiff a disciplinary report. *Id.*

Lieutenant Marcellin, an African-American officer, responded to the unit. *Id.* Officer Ross recounted the events but left out the racial comments. *Id.* Officer Ross acknowledged that they could not send the plaintiff to segregation but asked Lieutenant Marcellin to agree to a charge of interfering with safety and security for failing to move to another table because the plaintiff had made a PREA complaint against Officer Beckert. *Id.*

Lieutenant Marcellin asked the plaintiff if he was going to obey the officers. *Id.* The plaintiff refused, claiming the actions were retaliation for the PREA complaint, his cell could

not be searched because he was not on high security status, and there was no rule preventing him from sitting at that table. *Id.* Lieutenant Marcellin sent the plaintiff to segregation, even though the plaintiff stated that he had just served fifteen days in segregation and under the "Protect Act" he could not be sent to segregation again for ninety days. *Id.* In the segregation unit, the plaintiff underwent an allegedly illegal controlled strip search during which Officer Roach grabbed the plaintiff's penis. *Id.* Officer Roach and other officers removed the plaintiff's clothing instead of having the plaintiff remove his own clothes. Doc. 1-5 at 1. The next morning, the plaintiff was released from segregation. *Id.*

On November 26, 2023, Officer Ross searched the cell next to the plaintiff's cell. *Id.* The inmate in that cell was permitted to sit at the same table the plaintiff had occupied. *Id.* When the plaintiff asked Officer Ross why the other inmate was not required to move, Officer Ross stated, "because he's white and pure." *Id.*

Disciplinary Investigator Officer Nordby went to the A&P room, destroyed the plaintiff's personal photographs, removed his legal work from the file boxes and emptied the manila envelopes into a garbage bag and mixed it together. *Id.* Officer Nordby also told the plaintiff that he had confiscated some legal work in retaliation for the plaintiff filing the PREA complaint against Officer Beckert. *Id.* The disciplinary charge was dismissed on November 29, 2023. *Id.*

## II.    <u>LEGAL STANDARD</u>

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings, both those where the prisoner pays the filing fee and those where he proceeds *in forma pauperis*. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157,

159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)).  Here, the plaintiff is proceeding *in forma pauperis.*

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  The Court, however, is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

It is well-established that submissions of *pro se* litigants are "reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)).  *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must

be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)).  This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above; a *pro se* complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (summary order) (quoting *Iqbal*, 556 U.S. at 678).  Therefore, even where a plaintiff is proceeding *pro se*, the Court may not "invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## III.   **DISCUSSION**

The plaintiff brings the following federal claims:  denial of access to the courts against Warden Maldonado, and Officers Ross and Nordby; retaliation against Officers Beckert, Ross, and Nordby and Lieutenant Marcellin; violation of PREA protocols against Warden Maldonado, Officer Beckert, and Lieutenant Marcellin; supervisory liability against Lieutenant Marcellin; sexual harassment against Officer Beckert; and sexual abuse/excessive force against Officer Roach.  He also generally alleges that all defendants caused him to be subjected to cruel and unusual punishment in violation of the Eighth Amendment and unsafe conditions of confinement in violation of the Fourteenth Amendment.  Construing the allegations liberally, the Complaint also may be read to assert federal claims for deprivation of property and denial of equal protection of the laws.  In addition to the federal claims, the plaintiff asserts state law claims for slander/defamation of character and violation of several state law provisions.

### A.      **Denial of Access to the Courts**

The plaintiff asserts two access to courts claims.  First, he contends that Warden Maldonado rejected his appeal of the disciplinary finding solely to prevent him from filing this

action.  Second, he alleges that Officers Ross and Nordby interfered with pending legal actions by confiscating and mixing up his legal papers.

To state a claim for denial of access to the courts, the plaintiff must assert non-conclusory allegations showing both that the defendant acted deliberately and maliciously, and that he suffered an actual injury.  *See Lewis v. Casey*, 518 U.S. 343, 353 (1996).  The plaintiff must allege that the defendant took, or was responsible for, actions that frustrated his efforts to pursue a nonfrivolous legal claim.  *Id.*  This actual injury requirement "is not satisfied by just any type of frustrated legal claim." *Id.* at 354.  The Supreme Court has restricted the types of claims to direct appeals of criminal convictions, habeas petitions, and "civil rights actions—*i.e.*, actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" *Id.* (citation omitted). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original).

### 1.   Warden Maldonado

The plaintiff argues that Warden Maldonado rejected the appeal of his disciplinary finding to prevent him from filing this lawsuit.  There are only two possible claims the plaintiff could make regarding the disciplinary proceeding, that the charge was false and that he was denied due process at the hearing.  The plaintiff does not argue that he was denied appropriate process at the hearing.  Further, a false disciplinary report is actionable only if the inmate is denied due process at the associated disciplinary hearing.  *See Mitchell v. Senkowski* 158 F. App'x 346, 349 (2d Cir. 2005).  As the plaintiff does not allege that he was denied due process and, in fact, concedes that the charge was dismissed, there is no factual basis for either claim.

Warden Maldonado properly rejected the disciplinary appeal because the plaintiff prevailed at the disciplinary hearing. The denial of access to the courts claim against Warden Maldonado is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### 2.   Officers Ross and Nordby

The plaintiff alleges that Officers Ross and Nordby confiscated some of his legal work and disarranged the rest. He has not, however, identified any case where a meritorious legal claim was dismissed as a result of these actions. Thus, he fails to allege a plausible claim for denial of access to the courts. The denial of access to the courts claims against Officers Ross and Nordby are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### B.   Retaliation

The plaintiff alleges that Officers Beckert, Ross, and Nordby and Lieutenant Marcellin retaliated against him because he submitted a PREA complaint against Officer Beckert. To state a plausible retaliation claim, the plaintiff must allege facts establishing: "(1) that the speech of conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter,* 938 F.3d 21, 40 (2d Cir. 2019).

Protected speech or activity includes, for example, "filing a lawsuit, an administrative complaint, or a prison grievance." *Stewart v. Ayala*, No. 3:20-CV-1938(CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022). "Although not all oral speech by an inmate constitutes protected activity, some courts within the Second Circuit have determined that verbal or oral complaints about the conduct of prison officials or conditions of confinement may constitute protected speech in the context of a First Amendment retaliation claim." *Id.*

The plaintiff made a PREA complaint against Officer Beckert on the PREA hotline. For purposes of initial review, the Court considers the PREA complaint to be protected speech.

The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citation omitted) (omission in original). This objective test applies even if the plaintiff was not deterred from exercising his rights. *Id.* Conduct that is *de minimis*, however, does not give rise to an actionable claim for retaliation. Whether conduct is considered *de minimis* varies by context with prisoners required to tolerate more than public employees or average citizens. *See Dawes v. Walker*, 239 F.3d 489, 491, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). If the allegedly retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Id.* at 493. In response to the PREA complaint, the plaintiff's cell was searched, his legal work was confiscated and disarranged, he received a disciplinary report, and he was sent to segregation. The Court considers these actions sufficiently adverse to survive initial review.

The plaintiff can establish a causal connection that suggests retaliatory intent to meet the third factor by showing that his protected activity was close in time to the alleged adverse action. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted). A plaintiff also may show a causal connection through his vindication at a hearing if the adverse action is a disciplinary charge, or statements by the defendant regarding his motive for his actions. *See Gomez v. Sepiol*, No. 11-CV-1017SR, 2014 WL 1575872, at *4 (W.D.N.Y. Apr. 11, 2014) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)). The plaintiff alleges facts

meeting all of these requirements.  He alleges that several defendants told him their actions were because he had filed the PREA complaint against Officer Beckert, the disciplinary charge was dismissed, and the actions occurred shortly after he made the PREA complaint.  Thus, the facts alleged establish the required causal connection.

The retaliation claims will proceed against defendants Beckert, Ross, Nordby, and Marcellin.

**C.     PREA Violations**

The PREA, Prison Rape Elimination Act, was enacted to address the issue of rape in prison.  It was intended to compile data and statistics concerning incidents of prison rape and to develop and implement national standards to detect, prevent, and punish prison rape.  *See* PREA, 42 U.S.C. §§ 30302-03, 30306-07.  The PREA does not provide any specific rights to prisoners.  *See Gonzaga University v. Doe*, 5536 U.S. 273, 279-80 (2002) (absent "an 'unambiguous' intent to confer individual rights," such as a private right of action, the court will not imply the existence of such a right in a federal funding provision).  Thus, district courts have held that there is no private right of action for prisoners to sue prison officials for failure to comply with the PREA.  *See Abrams v. Erfe*, No. 3:17-CV-1579(CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) (PREA does not create private right of action for prisoners) (citing cases).

The plaintiff alleges that PREA protocols were not followed because Officer Beckert was permitted to remain in the plaintiff's housing unit.  As the plaintiff has no rights under the PREA, this action does not support a cognizable claim.  *See, e.g., Gilliam v. Black*, No. 3:18-cv-1740(SRU), 2019 WL 3716545, at *5 (D. Conn. Aug. 7, 2019) (allegations that correctional staff failed to follow PREA guidelines and file complaint or violated inmate's rights under

PREA fail to state cognizable claim); *Granger v. Santiago*, No. 3:19-cv-60(MPS), 2019 WL 1644237, at *7 (D. Conn. Apr. 16, 2019) (no cognizable claim for denial by prison officials to call PREA unit). All claims based on the failure to comply with PREA requirements are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Further, even construing the plaintiff's claim as alleging a violation of the prison PREA directive, his claim fails. Prison rules and directives do not create private causes of action under section 1983. *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) ("prison regulations" are "primarily designed to guide correctional officials in the administration of a prison," and are "not designed to confer such rights on inmates"); *Dorlette v. Melendez*, No. 3:15-CV-1856(VAB), 2020 WL 927956, at *8 (D. Conn. Feb. 26, 2020) (failure of prison officials to follow Administrative Directive 9.5 does not show violation of constitutionally or federally protected right as required to state a claim under section 1983) (citing cases); *see also Truell v. City of New York*, No. 20-CV-0992(CM), 2020 WL 1144581, at *2 (S.D.N.Y. Mar. 9 2020) (claim that defendants failed to follow New York City Department of Correction's own rules not cognizable under section 1983).

## D. Supervisory Liability

The plaintiff must allege facts showing that any defendant against whom he seeks damages was personally involved in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (internal citation and quotation marks omitted). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special

test for supervisory liability").  The plaintiff states that he brings a claim for supervisory liability against Lieutenant Marcellin under the theory of respondeat superior, *i.e.*, holding him responsible for the tortious actions of his subordinates.  Respondeat superior, however, is not a tenable theory of liability in a section 1983 case.  *See Ashcroft*, 556 U.S. at 676.  Thus, the supervisory liability claim against Lieutenant Marcellin is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### E.      Eighth Amendment Claims

The plaintiff asserts Eighth Amendment claims for verbal sexual harassment against Officer Beckert and for sexual abuse or excessive force against Officer Roach.  The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  To state a plausible Eighth Amendment claim, the plaintiff must allege facts establishing an objective element and a subjective element.  Objectively, the conduct complained of must be "sufficiently serious" to constitute a constitutional violation.  *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 20 (1992) (internal quotation marks omitted).  Analysis of the objective element "depends upon the claim at issue."  *Id*. (quoting *Hudson*, 503 U.S. at 8 (internal quotation marks omitted).  "[T]he Eighth Amendment is offended by conduct that is 'repugnant to the conscience of mankind," *i.e.*, actions that "are 'incompatible with evolving standards of decency' or involve 'the unnecessary and wanton infliction of pain.'"  *Id*. (quoting *Hudson*, 503 U.S. at 9-10, 10).  The subjective element requires that the prison official "acted with a subjectively 'sufficiently culpable state of mind.'"  *Id.* (quoting *Hudson*, 503 U.S. at 8).

**1.      Sexual Harassment**

The plaintiff brings a claim for verbal sexual harassment against Officer Beckert for her comments.  Claims of verbal sexual harassment are evaluated under the standard in *Crawford*. *See Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) (directing district court to evaluate claims of verbal sexual harassment under *Crawford* standard).

In *Crawford*, the Second Circuit held that "even one incident of sexual abuse that is 'sufficiently severe or serious' can constitute an Eighth Amendment violation."  *Crispin v. Peiri*, No. 3:21-CV-00475(KAD), 2023 WL 2931846, at *10 (D. Conn. Apr. 13, 2023) (quoting *Crawford*, 796 F.3d at 257). "Even an incident of verbal sexual harassment can be actionable if it caused the inmate to suffer an appreciable injury." *Id.* (citing *Willey*, 801 F.3d at 70).  In *Willey*, the Second Circuit remanded the case for the district court to consider whether the prisoner's allegation of "psychological pain" and attempt to commit suicide constituted the required appreciable injury.  801 F.3d at 70.

The plaintiff alleges that Officer Beckert made sexual comments to another inmate with, he assumes, an intent to get the inmates to fight.  Doc. No. 1 at 4.  He does not allege that the statement caused him any injury, psychological or physical.  Thus, the plaintiff fails to state a cognizable claim against Officer Beckert.   *See Negron v. Matthews*, NO. 3:17cv1042(SRU), 2019 WL 1298558, at *5-6 (D. Conn. Mar. 21, 2019) (dismissing Eighth Amendment claim where inmate alleged a single incident of verbal sexual harassment with no physical touching and no emotional or psychological harm or pain resulting from the incident) (citing cases). The claim against Officer Beckert for sexual harassment is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The plaintiff also alleges that, on another day, Officer Beckert called him derogatory names based on his sexual orientation.   Such actions, however, do not state an Eighth Amendment claim for sexual abuse.  *See Trowell v. Theodarakis*, No. 3:18cv446(MPS), 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (allegation that correctional officer called plaintiff "derogatory names based on [plaintiff's] sexual orientation" did not state Eighth Amendment claim for sexual abuse).

### 2.    Sexual Abuse/Excessive Force

The plaintiff alleges that Officer Roach pulled his clothing off to perform a strip search when the plaintiff was brought to segregation and during the search, touched the plaintiff's penis. The plaintiff states that pulling his clothing off instead of permitting the plaintiff to remove his own clothing is a violation of PREA protocol.   As explained above, the violation of PREA protocol is not cognizable in a section 1983 action.   Thus, any claim based on the removal of his clothing is dismissed pursuant to pursuant to 28 U.S.C. § 1915A(b)(1).

"A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford*, 796 F.3d at 257.  In considering these claims, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257-58 (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (explaining that Eighth Amendment analysis turns on whether force was used "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm")).  Thus, even one isolated incident of sufficiently severe or serious sexual abuse may be actionable.

Here, the plaintiff identifies only one incident and alleges that Officer Roach grabbed his penis while conducting a strip search.  Thus, the plaintiff has identified a legitimate penological reason for the search and does not allege that Officer Roach acted solely for his own sexual gratification or to humiliate the plaintiff.  Accordingly, the sexual abuse claim against Officer Roach is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Nor is the allegation sufficient to support a claim for use of excessive force.  Again, the plaintiff must allege facts establishing both objective and subjective components.  *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000).  The objective component "focuses on the harm done" to the prisoner in light of "contemporary standards of decency," and the amount of harm "depends on the nature of the claim."  *Id*. at 21 (citing *Hudson*, 503 U.S. at 8).  Although some degree of injury is usually required, the prisoner need not show that he suffered a "significant injury" to state a claim for use of excessive force.  *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury."  *Id.* at 34 (quoting *Hudson*, 503 U.S. at 4).  However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"  *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9).  Here, the plaintiff does not allege that he suffered any injury.

The subjective component of the "excessive force" standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as part of 'a good faith effort to maintain or restore discipline.'"  *Id*. at 40 (quoting *Hudson*, 503 U.S. at 9).  The courts must consider whether "the officials act[ed] with a sufficiently culpable state of mind."  *Hudson*, 503 U.S. at 8 (citation omitted).  The extent of the inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the

force necessary in a particular situation.  *Id.* at 7.  Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Id.* (citation and internal quotation marks omitted).  Again, Officer Roach was conducting a strip search incident to placement in segregation.  That reason, along with the lack of injury, shows that the plaintiff fails to allege a plausible claim for use of excessive force based on Officer Roach touching his penis.

### F.    Unsafe Conditions

The plaintiff asserts a Fourteenth Amendment claim for unsafe conditions of confinement, presumably under the Due Process Clause.  "[W]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claim under that explicit provision and not the more generalized notion of substantive due process."  *Kai P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000) (quoting *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (internal quotation marks omitted).  The plaintiff does not allege separate facts to support this claim, Thus, the Court considers this claim to be a restatement of the effects of the retaliatory conduct described above.  Any repetitive claim under the Fourteenth Amendment is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### G.    Lost Property

The plaintiff alleges that Officer Nordby destroyed his personal photographs and that Officers Nordby and Ross confiscated some of his legal work.  "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property[.]" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Where the claim is based on the deprivation of property, the Supreme Court has held that the crucial requirement is that the plaintiff was

deprived of his property without due process of law.  *See Parratt v. Taylor*, 451 U.S. 527, 537 (1981).  If a pre-deprivation hearing is impracticable, as here where the deprivation appears to have been unplanned, a state-authorized post-deprivation hearing that offers a full and meaningful hearing for the plaintiff will satisfy the requirements of due process.  *See id*. at 541; *see also Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (prisoner cannot state a due process claim for lost property if the state has created adequate post-deprivation remedies).

The defendants are correctional employees.  Connecticut provides a remedy for individuals claiming unauthorized deprivations of property by state officers.  *See, e.g., Sherman v. Corcella*, No. 3:19-cv-1889(CSH), 2020 WL 4043178, at *17 (D. Conn. July 16, 2020); *Longmoor v. Nilsen*, 329 F. Supp. 2d 289, 302 (D. Conn. 2004).  Specifically, Connecticut General Statutes Section 4-141, et seq., provides that a person may bring a claim with the Connecticut Claims Commissioner. Inmates may bring such an action if their claim with the Lost Property Board is denied.  The Second Circuit has held that Connecticut's post-deprivation remedies for lost property satisfy the constitutional requirement.  *See Riddick v. Semple*, 731 F. App'x 11, 13-14 (2d Cir. 2018).

As Connecticut has adequate post-deprivation remedies, the plaintiff cannot state a plausible due process claim against defendants Ross and Nordby for lost or damaged property. This claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### H.    Equal Protection

The Complaint may be construed to assert a violation of the Equal Protection Clause. "[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the

exercise of constitutional rights, or malicious bad faith intent to injury a person.'" *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (emphasis omitted)).  Equal protection does not mandate identical treatment for each individual, but rather requires that similarly situated persons be treated the same.  *See Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009).  Thus, to state a traditional equal protection claim, the plaintiff must allege facts showing that he was treated differently from other similarly situated inmates and that the different treatment was based on one of these reasons.  *See Nicholson v. Hannah*, No. 3:20-cv-209(JAM), 2020 WL 3086022, at *5 (D. Conn. June 10, 2020) (citations omitted).

The plaintiff alleges that the inmate in the cell next to his was permitted to sit at a table while Officer Ross searched his cell when the plaintiff was not permitted to sit at the same table. When the plaintiff questioned Officer Ross, he was told that the other inmate could sit at the table because he was white.  These allegations are sufficient to state a plausible claim that officer Ross violated the plaintiff's right to equal protection of the laws by discriminating against him on the basis of race.  As Officer Ross was the only defendant allegedly involved in both searches, the equal protection claim will proceed only against Officer Ross.

## I.     Official Capacity Claims

The plaintiff seeks damages from all defendants in their official and individual capacities. The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1995).  Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979).  Nor does the plaintiff allege facts suggesting that the state has waived immunity in this case.  Thus, as all defendants are state officials, the plaintiff

cannot obtain damages from any defendant in his or her official capacity. All claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### J.    State Law Claims

The plaintiff asserts claims for violation of various state statutes and miscellaneous references as well as state tort claims. The plaintiff asserts claims for violation of the following state statutes: Connecticut General Statutes §§ 18-81, 18-81cc, 52-571a, 52-571c, 52-590, 53-20, 53a-6, 53a-8, 53a-70, 53a-71, 53a-71a, 53a-72a. 53a-73a. 53a-125b, 53a-702, and 462-58.

With the exception of section 53a-702, which does not exist, all of the statutes from titles 53 and 53a are state criminal statutes. The Court has reviewed the text of each statute and finds no language creating a private right of action under any of them. As the plaintiff does not provide any authority indicating that any of the statutes creates a private right of action, all claims for violation of Connecticut General Statutes §§ 53-20, 53a-6, 53a-8, 53a-70, 53a-71, 53a-71a, 53a-72a. 53a-73a. 53a-125b, and 53a-702 are dismissed with prejudice.

Sections 18-81 describes the duties of the Commissioner of Correction and section 18-81cc describes the prevention, detection, and monitoring of sexual abuse in correctional facilities. The Court assumes that this section is what the plaintiff also refers to as the "Protect Act." Neither statute provides a private right of action for prisoners. All claims for violation of sections 18-81 and 18-81cc are dismissed with prejudice.

Section 52-590 concerns calculation of the limitations period for claims created by state statutes. As this section provides no cause of action, the plaintiff's claim for violation of this provision is dismissed with prejudice. Finally, the plaintiff asserts a claim for violation of section 462-58, a provision that does not exist.

The only provisions that may support state law claims are sections 52-571a, 52-571c, and 52-590. The Court will permit these three claims to proceed to service along with the plaintiff's state law claim for slander.

The plaintiff also claims violation of 1708.75 and 1705-30. He does not identify these numbers and the Court cannot discern their origin. There is no indication that they are constitutional rights or causes of action and their mention does not state a cognizable claim against any defendant. Thus, any purported claims are dismissed with prejudice.

## IV.   **CONCLUSION**

All claims for denial of access to the courts, sexual harassment, sexual assault, and the separate claim for unsafe conditions are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). All claims for supervisory liability on a theory of respondeat superior, violation of the PREA, lost property, and damages from the defendants in their official capacities are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b).

The case will proceed on the federal claims for retaliation against defendants Beckert, Ross, Nordby, and Marcellin and denial of equal protection against defendant Ross.

The case also will proceed against these defendants on the plaintiff's state law claims for violation of Connecticut General Statutes Sections 52-571a, 52-571c, and 52-590 and the state tort claim for slander. All other state law claims are dismissed with prejudice.

The plaintiff has two options as to how to proceed in response to this Initial Review Order:

(1) If the plaintiff wishes to proceed immediately on the claim against defendants Beckert, Ross, Nordby, and Marcellin and only as set forth above, he may do so without further delay. If the plaintiff selects this option, he shall file a notice on the docket by **February**

**26, 2024** informing the court that he elects to proceed with service as to the claims listed above.  The court will then begin the effort to serve process on the listed defendants.

(2)  Alternatively, if the plaintiff wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed without prejudice in order to attempt to state a viable claim, he may file an Amended Complaint by **February 26, 2024**.  An Amended Complaint, if filed, will completely replace the Complaint and the Court will not consider any allegations made in the Complaint in evaluating any Amended Complaint.  The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein.  If the plaintiff elects to file an Amended Complaint, the Complaint this Initial Review Order addressed will not proceed to service of process on any defendant.  Further, the Amended Complaint shall comply with the pleading requirements in Federal Rule of Civil Procedure 8.  Specifically, the allegations shall be set forth in separately numbered paragraphs with one sentence in each paragraph, the allegations shall be facts showing that each defendant has violated the plaintiff's constitutional rights and shall not include discussions of the law, case citations, or irrelevant digressions as does the Complaint.  Failure to comply with these instructions may result in imposition of sanctions by the Court.

If the Court receives no response from the plaintiff by **February 26, 2024**, the Court will presume that the plaintiff wishes to proceed on the Complaint as to the claims permitted to go forward in this Initial Review Order, and the plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future. Additionally, if the Court receives no response from the plaintiff by **February 26, 2024**, the Clerk is directed to do the following:

(i)    **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for defendants Beckert, Ross, Marcellin, and Nordby, mail a waiver of service of process request packet containing the Complaint and this Order to the defendants at the address provided by **March 18, 2024**, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If a defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in their individual capacity and the defendant shall be required to pay the cost of such service.

(ii)    **The Clerk shall** send the plaintiff a copy of this Order.

(iii)    **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(iv)    The defendants shall file the response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

**Change of Address**. If the plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify Defendants or counsel for

Defendants of his new address.

**SO ORDERED.**

Hartford, Connecticut
January 26, 2024

      /s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge